IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| ROSLYN BORREGO, | ) | CASE NO: 4:14-cv-3024 |
| | ) | |
| Plaintiff, | ) | |
| | ) | PLAINTIFF'S REPLY BRIEF |
| vs. | ) | |
| NELNET, | ) | |
| | ) | |
| Defendant. | ) | |

**<u>Introduction</u>**

Plaintiff has produced sufficient competent evidence that a reasonable jury could infer defendant's failure to re-hire plaintiff in October 2011 and December 2011 was motivated by her being an African-American.. Plaintiff was originally hired with the defendant in a customer service position in March 2008 and she successfully worked for the defendant in a customer service position until January 2011, when she voluntarily resigned because she thought she would be relocating. Plaintiff was in fact promoted by the defendant in 2010. Plaintiff has produced evidence showing that lesser qualified whites were hired for customer service positions in October 2011 when plaintiff applied. Furthermore defendant has given an inconsistent and not credible reasons why plaintiff was not hired in October 2011 for a customer service position.

Defendant claims that plaintiff was not hired for a customer service position in December 2011 because of concerns over a 8 ½ year assault conviction that was set aside in 2007. Again this reason is pretextual because of plaintiff's strong employment record with the defendant.. In addition the defendant has produced nothing but shifting, inaccurate and not credible reasons why the plaintiff was not hired in December 2011 and the also appeared not to have followed their own policies in not re-hiring plaintiff in December 2011.

20148610.1

**Response to Defendant's Facts**

36. Plaintiff agrees with the undisputed facts stated in Paragraphs 1-5 of defendant's brief.

37. Plaintiff disputes Werley's statement in his affidavit in Paragraph 6 that plaintiff was not hired because she failed a background check. (Ex 3, ¶ 7) Werley's testified in his deposition that plaintiff was rude to Schwasinger during the interview process and that was part of the reason that plaintiff was not hired. (Ex 5: Deposition of Jeff Werley, 27:13-24; 50:13) This deposition testimony also contradicts another statement in Worley's affidavit that the results of plaintiff's background check were the sole reason why plaintiff was not hired for the loan collector position. (Ex 3 ¶17)

38. Plaintiff does not dispute Defendant's Paragraph 7-8

39. Plaintiff disputes the allegation in Paragraph 9 that Nelnet "created a position" for plaintiff. Jason Lattimer requested permission to open up a position on his team for plaintiff. (Ex 6: E-mail from Jason Lattimer, December 5, 2011)

40. Plaintiff does not dispute Paragraphs 10-13.

41. Plaintiff agrees with the statements in Paragraph 14. But plaintiff would note that she not only retained employment with defendant after the defendant received the Department of Education contract in 2009, but she was in fact promoted in 2010. (Defendant's Statement of Facts ¶3, Ex 3, ¶4; Ex 1, 11:24-12:5; 12:16-13:17;38:6-18)

42. Plaintiff does not dispute Paragraph 15.

43. Plaintiff agrees with Paragraph 16. But plaintiff would note that she not only retained employment with defendant after the defendant received the Department of Education contract in

2009, but she was in fact promoted in 2010 . ( Defendant's Statement of Facts ¶3, Ex 3, ¶4; Ex 1, 11:24-12:5; 12:16-13:17; 38:6-18)

44. Plaintiff also testified that she told Schwasinger that plaintiff never had a problem with getting belligerent with customers. (Ex 1, 38:22-39:20) This statement by the plaintiff is corroborated by the fact that she was promoted from a customer service position. (Defendant's Statement of Facts ¶3, Ex 3, ¶4; Ex 1, 11:24-12:5; 12:16-13:17; 38:6-18)Furthermore Nelnet's own Predictive Index at the time it first hired the plaintiff showed that the plaintiff would promote "teamwork by actively sharing authority; often puts team company goals before personal goals." (E7; Summary of Predictive Index)  The Predictive Index also showed that plaintiff would be "cooperative, easy-going, and agreeable in getting along with other people. A focused uncritical listener who wouldn't rock the boat." Schwasinger testified that a person with such a personality would be a good fit for a customer service job and that she wouldn't be concerned with having such a person having negative or confrontational conversations. (Ex 2: 48:9-22) Schwasinger later testified that because plaintiff was promoted from her customer service job to a QA position, that plaintiff was a good hire and the predictive index was accurate in assessing plaintiff's personality. (Defendant's ¶ 3; Ex 2: 52:20-54:20)  Worley also testified that the predictive index was a useful tool in hiring people and was generally accurate in predicting how employees would behave on the job. (Ex 5:10:9-12:9)

45. Plaintiff does not dispute Defendnat's ¶18, but objects on FRCP 56(c) grounds that Werley would have first hand knowledge of what the report said at the time he and Schwasinger decided not to rehire Plaintiff in December 2011.

46. Plaintiff disputes Defendant's ¶19. Plaintiff notes that defendant states they informed plaintiff she failed her background check on December 11, 2011 in Paragraph ¶23, whereas in Paragraph 20 they state defendant rejected plaintiff's application on December 9, 2011. Plaintiff also testified that she believed that Nelnet already knew that the conviction set aside, this testimony is credible because plaintiff passed a background check when Nelnet received its contract from the Department of Education. (Ex 1; 61:17-21; Ex 2; 107:2-108:8; Defendant's ¶14) Furthermore plaintiff testified that Schwasinger never asked plaintiff for written proof that her conviction had been set aside (Ex 1: 31:24-32:1) Plaintiff's testimony is corroborated a position statement to the NEOC from the defendant stating that plaintiff was never asked to provide documentation that her conviction had been set aside. (Ex 8 pg 1: July 9, 2012 supplemental position statement to NEOC)

47. Plaintiff objects to Defendant's ¶21 on the basis FRCP 56(c)2 as defendant is making a conclusory statement that it was logical for Schwasinger to ask about an address in Texas when plaintiff testified she had never lived in Texas.

48. Plaintiff disputes Defendant's Paragraph ¶ 22. While Worley may have had the final authority to hire plaintiff, he did so with input from Schwasinger who testified it was a mutual decision between Werley and her. (Ex 9; NEOC interview notes with Jeff Worley, July 23, 2012; Ex 2:87:2-16) Schwasinger reported that she had a negative conversation with plaintiff about her prior assault conviction. ( Ex 5: Deposition of Jeff Werley, 27:13-24; 50:13) Furthermore Schwasinger was aware of plaintiff's race. (Ex 2: 35:20-36:7) Furthermore, plaintiff was truthful in her statement that her conviction had been set aside. (Ex 10: Justice Search information for Roslyn Borrego)

20148610.1

49. Plaintiff disputes Defendant's ¶23 and 24 for the reason that defendant also cited plaintiff's negative attitude and behavior in the interview process as a reason for not hiring her. Ex 8; Ex 5: Deposition of Jeff Werley, 27:13-24; 50:13)

50. Plaintiff disputes Defendant's ¶25. The undisputed testimony is that criminal convictions are reviewed on a "case by case" basis. (Ex 2: 37:38-22; Ex 5: 37:10-13; Ex 11, Summary of Nelnet Hiring Practice), under that logic a DUI could disqualify a person from employment at Nelnet which in fact is Nelnet's policy. (Ex 2: 62:20-24) The reason why DUI's are reviewed on a case by case basis is that good judgment is essential for working in customer service and driving a motor vehicle over the legal limit is evidence of bad judgment. (Ex 2: 62:12-19) Nelnet also has a "drug free" workplace policy to ensure the workplace is free from the use of drugs that would influence or inhibit an employees work behavior. (Ex 2; 16:4-11) Schwasinger stated that the use of alcohol could impair both productivity and negatively impact interactions with customers. (Ex 2: 17:1-25)Though defendant considered crimes involving violence to be serious, it was also concerned with financial crimes to be serious. (Ex 12 pg 1, Summary of Nelnet Hiring Practices) This is logical since defendant is a financial services company. (Defendant's ¶ 1) However defendant hired a white male, Jillian Boname, was hired as a loan adviser even though he plead guilty to bad checks. (Ex 12; List of Nelnet Employees hired with criminal convictions; Ex 2: 63:5-64:20; Ex 5: 36:18-38:15)

51. Plaintiff disputes Defendant's ¶25. First of all it shows the source of plaintiff's job application as "Careerbuilder.com" (Ex 4, G) when defendant stated in their factual section that her job was posted solely for her. (Ex 3, ¶8, Defendant's ¶8) In addition since defendant review convictions on a " case by case" basis (Ex 2: 37:38-22; Ex 5: 37:10-13; Ex 10) it is not clear

whether the other employees were similarly situated hence this statement should be rejected as conclusory statement without sufficient foundation under FRCP 56(2)c.

52. Plaintiff agrees with Defendant's ¶27 and 28.

53. Plaintiff disputes Defendant's ¶29. The NEOC interview notes with Renee Schwasinger, taken in the presence of Kelly McKeever and in-house counsel for the defendant state that plaintiff actually applied for the loan advisor job on October 16, 2011, not on October 20, 2011 as indicated in the affidavit of Jeff Werley. (Ex 3, ¶22) The NEOC notes are confirmed by the defendant's Candidate and Tracking History for the defendant. (Ex 13: pg 2) Furthermore, the NEOC notes that two white candidates, Derrick Mudge and Kristen Ebbecka applied for the loan advisor job after the plaintiff and were hired. (Ex 14, NEOC Interview Notes with Schwasinger) Neither Ebbecka nor Mudge had previously worked at Nelnet. Furthermore, Mudge only worked at Nelnet for three months. (Ex 14, Ex 5:21:2-7) Werley testified in his deposition that the loan advisor position was similar to the loan collector position that plaintiff was successful at during her time at Nelnet. (Ex 5: 19:2-25; Defendant's ¶3)

54. Plaintiff objects to Defendant's ¶30 and 31 as legal conclusions not admissible into a summary judgment proceeding under FRCP 56(c)2.

55. Plaintiff also objects to the statement in Defendant's¶32 that she failed to exhaust administrative remedies as an inadmissible under FRCP 56(c)2

**Additional Facts from Plaintiff**

56. Schwasinger told plaintiff that she would receive a copy of the results of her background check, but plaintiff testified that she never received a copy of the background report. (Ex 1: 52:23-53:14) Though it was Nelnet's policy to provide letters in regards results under the Fair

Credit Reporting Act and Nelnet verifies those letters are sent (Ex 5: 28:14-22; 29:17-22), Nelnet never provided a copy of the letter it sent to Borrego. (Ex 8: Supplemental Position Statement to NEOC, July 5, 2012, pages 1-2) Defendant also stated that plaintiff never disputed the results of her background check.

57. Defendant's stated policy on criminal convictions was that it generally looked back seven years. (Ex 11: Summary of Nelnet Hiring Practices.) The seven-year guideline is consistent with Schwasinger's testimony that criminal convictions that are recent should be given more weight than one in the distant past. (Ex 2: 37:17-28:18, However plaintiff's conviction was over 8 ½ years before she reapplied with Nelnet in 2011. (Ex 4, Ex F, pg 7) In its original position statement, defendant stated that DUI convictions that were over 10 years old were not relevant. (Ex 15: pg 8, February 28, 2012 NEOC Position Statement)

58. Schwasinger was aware of plaintiff's race because she interviewed her in person for the collector position. (Ex 2:35:11-36:7) Defendant was also aware of plaintiff's race when she applied for the loan advisor job in October 2011. (Plaintfff's Complaint ¶30; Defednant's Answer, ¶30)

**Standard of Review**

Summary judgment is about meeting a burden of production to produce competent evidence to determine if there is an issue of fact, *Hanzlik v. Paustian*, 318 NW 2d 712; 211Neb. 322 (Neb. 1982) On a motion for summary judgment, the question before the court is whether the record, when viewed in the light most favorable to the nonmoving party, shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Fed. R. Civ. P. 56(c)*; *Woods v. DaimlerChrysler Corp.*, 409 F.3d 984, 990 (8th

Cir. 2005). The burden of establishing the nonexistence of any genuine issue of material fact is on the moving party. *Fed. R. Civ. P. 56(c); Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). "The movant 'bears the initial responsibility of informing the district court of the basis for its motion, and must identify 'those portions of [the record] . . . which it believes demonstrate the absence of a genuine issue of material fact.'" *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc) (quoting *Celotex*, 477 U.S. at 323). If the movant does so, "the nonmovant must respond by submitting evidentiary materials that set out 'specific facts showing that there is a genuine issue for trial.'" *Id*. (quoting *Celotex*, 477 U.S. at 324).

"At the summary judgment stage, the court should not weigh the evidence, make credibility determinations, or attempt to determine the truth of the matter." *Anderson v Liberty Lobby Inc.,* 477 U.S. 242, 249 (1986). Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge. *Torgerson,* 643 F.3d at 1042. When a plaintiff meets his burden to produce evidence supporting a possible inference that the employer's proffered reasons are pretext for unlawful discrimination, the court may not grant summary judgment, even when it appears unlikely that the plaintiff will meet his ultimate burden to show that his termination was the result of discriminatory animus. *Hossaini v. W. Mo. Med. Ctr., 97 F.3d 1085, 1088 (8th Cir. 1996) DeStefano*, 129 S. Ct. 2658, 2677 (2009)).

**<u>Argument</u>**

Plaintiff concedes the *McDonnell-Douglas* burden shifting frame work applies , so she will not repeat it here. But plaintiff believes it useful to explain how the McDonnell-Douglas test

is applied .A "claimant's 'prima facie case is not an onerous burden under the McDonnell Douglas burden-shifting scheme The reason that making a prima facie case is not a difficult burden is that if a plaintiff generates a fact question on each element of her *prima facie* case, a presumption of discrimination automatically arises. *Texas Dept. of Community Affairs v. Burdine*, 450 US 248 (1981) *accord Hicks, 509 U.S. at 506, 113 S.Ct. 2742. S*uch an inference is appropriate because "establishing" a *prima facie* case `raises an inference of discrimination only because . . . [the employer's actions], if otherwise unexplained, are more likely than not based on the consideration of impermissible factors.' *Burdine, 450* U.S. at 254, 101 S.Ct. 1089 *(quoting Furnco Constr. Corp*., 438 U.S. at 577, 98 S.Ct. 2943). Plaintiff concedes that defendant has produced a reason or reasons why the defendant was not hired so it has the burden to show why that reason is pre-textual

Since employers are not apt to announce unlawful motives discrimination cases usually must be proven by circumstantial evidence. *Riesen v . Irwin Industrial Tool Co*, 7171 N.W. 2d 907 (Neb .2006) However circumstantial evidence is not only sufficient in civil cases, but may also be more certain, satisfying and persuasive than direct evidence*." Costa v. Desert Palace, Inc.* 539 U.S. 90 (2002) The 8th Circuit has cited several ways to use circumstantial evidence demonstrate pretext, among them are proof that the plaintiff was treated differently than similarly-situated co-workers outside the protected class, e.g., *Allen v. Tobacco Superstore, Inc*., 475 F.3d 931, 937-38 (8th Cir.2007); proof that a less-qualified individual was chosen for a position or promotion, e.g., *Peterson, 406 F.3d at 523; Hammer v. Ashcroft, 383 F.3d 722, 724-25 (8th Cir.2004); ,*proof that the employer's reason for the adverse employment action shifted

from one reason to another over time, as well as evidence supporting the plaintiff's prima facie case. *Duffy v. Wolle,* 123 F.3d 1026, 1037-38 (8th Cir.1997)

Other pieces of circumstantial evidence that support a finding of pretext include; evidence that a defendant's explanation for an employment practice is "unworthy of credence". *Reeves v. Sanderson Plumbing Products, Inc., 530 U. S. 133 (2000),* Allowing evidence that the defendant's explanation is false to serve as evidence of intentional discrimination is a byproduct of "the general principle of evidence law that the fact finder is entitled to consider a party's dishonesty about a material fact as `affirmative evidence of guilt.'" *Wright v. West,* 505 U.S. 277, 296, 112 S.Ct. 2482, 120 L.E d.2d 225 (1992) Finally failing to follow a company's own procedures can be evidence of pre-text. *Riesen, supra.*

**Defendant errs in relying on *Hollins* as the standard for a qualified employee in this case. Even if *Hollins* is the standard, it does not apply to the facts of this case.**

It has been long established that he precise elements of a prima facie case vary depending on the context and were never intended to be rigid, mechanized or ritualistic. *Swierkiewicz v. Sorema NA*, 535 US 506 (2002); *Ring v. First Interstate Mortgage, Inv*. 984, F. 2d 924, 927 (8th Cir 1993); *Teamsters v. United States*, 431 U.S. 324 (1977) McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973) Defendant's attempt to shoehorn the facts of this case into *Hollins v. Con-Way Freight*, 822 F. 3d 933 (8th Cir. 2010) are misplaced. The plaintiff in *Hollins* had never worked for the defendant. Defendant has conceded that plaintiff was a satisfactory employee at Nelnet during the time she employed there from March 2008 to January 2011. In fact plaintiff was promoted in 2010 and was deemed to be eligible for rehire. (Defendant's ¶3-5) Defendant also stated in they created a position for the plaintiff. (Defendant's ¶9) Defendant opened up a

position for plaintiff when a former supervisor described her a "solid" performer who was promoted who would have minimum training needs. (Ex 6) After reviewing parts of plaintiff's personnel file during the deposition, Schwasinger described plaintiff as a good hire. (Ex 2: 52:20-54:20 ) Werley testified in his deposition that the positions that plaintiff applied for in October 2011 and December 2011 were similar to the loan collector position that plaintiff was successful at during her time at Nelnet. (Ex 5: 19:2-25; Defendant's ¶3) Furthermore Nelnet's own Predictive Index at the time it first hired the plaintiff showed that the plaintiff would promote "teamwork by actively sharing authority; often puts team company goals before personal goals." (E7; Summary of Predictive Index)  The Predictive Index also showed that plaintiff would be "cooperative, easy-going, and agreeable in getting along with other people. A focused uncritical listener who wouldn't rock the boat." Schwasinger testified that a person with such a personality would be a good fit for a customer service job and that she wouldn't be concerned with having such a person having negative or confrontational conversations. (Ex 2: 48:9-22 ) In the context of a termination case plaintiff would be deemed to be a qualified employee. *Phillip v. Ford Motor Company*, 411 F. 3d 766 (8th Cir 2005)

  A failure to rehire a former recent employee who was a good employee, is more analogous to termination situation because employee performance is or should be known rather than a situation where an employer is hiring an untested new employee. *Hollins* is also not applicable because the defendant had an automatic policy of disqualifying employees with a theft conviction on their background check. Id at 622 F. 3d 933, 935. Defendant applied a case by case basis to criminal convictions on decisions to rehire employees. . (Ex 2: 37:38-22; Ex 5: 37:10-13; Ex 11, Summary of Nelnet Hiring Practice) In fact in this case, there is also evidence that

20148610.1

plaintiff passed a background check to retain employment with the defendant in 2009. .(Ex 1; 61:17-21; Ex 2; 107:2-108:8; Defendant's ¶14) So even if *Hollins* was the proper standard to apply for what constitutes a qualified employee, the facts of this case differ enough from this case to make inapplicable.

**Plaintiff can produce sufficient evidence that her failure to be re-hired as a loan advisor in October 2011 and as collector in December 2011 that would give rise to a reasonable inference that she was not re-hired because of her race.**

As stated above plaintiff was an ideal candidate for a customer service job with the defendant, not only by her personality but by her proven record of performance with the plaintiff. It is also undisputed that the defendant knew of plaintiff's race when she applied for the loan advisor position in October 2011 (Plaintfff's Complaint ¶30; Defednant's Answer, ¶30) and in December 2011. (Ex 2:35:11-36:7) So the question then becomes why defendant's failure to rehire plaintiff in October 2011 and December 2011 was pre-textual. Plaintiff will take up each failure to re-hire separately.

**October 2011 loan advisor position**

*Prima Facie case/previous good performance*

Defendant has conceded and the record has shown that plaintiff had a satisfactory and even good employment record with the defendant and was well-suited for the jobs she applied for with the defendant (¶3-5, 9, Ex 6; Ex 2: 52:20-54:20 ; Ex 7; Ex 2: 48:9-22 ) Defendant wants to downplay plaintiff's good job performance. (Ex 2: 54:20-24) however plaintiff's recent and positive employment performance goes to her prima facie case and the considerations of the prima facie case do not drop out in the pre-text stage of analysis. *Duffy v. Wolle,* 123 F.3d 1026,

1037-38 (8th Cir.1997) In short the defendant can't force this court to ignore plaintiff's previous and recent positive performance with the defendant at similar jobs at the pre-text stage as much it might desire to do so.

*Differing treatment of similarly situated employee/applicants and hiring promoting of less-qualified individualsin a different protected class*

Plaintiff hired two white individuals, Derrick Mudge and Kristen Ebbecka, for loan advisor positions. Though defendant states that plaintiff applied too late in the process, Mudge and Ebbecka were similarly situated in that they applied at the same time or after the plaintiff did. . (Defendant's Statement of Facts, ¶ 29 Ex 14, NEOC Interview Notes with Schwasinger) Neither Ebbecka nor Mudge had worked at Nelnet before and Ebbecka was hired after being fired from her previous job whereas plaintiff was eligible for rehire at Nelnet (Ex 14; Defendant's ¶4) Plaintiff has provided competent evidence that the plaintiff was treated differently than similarly-situated co-workers/applicants outside the protected class, e.g., *Allen v. Tobacco Superstore, Inc*., 475 F.3d 931, 937-38 (8th Cir.2007); and that a less-qualified individual was chosen for a position or promotion, e.g., *Peterson, 406 F.3d at 523; Hammer v. Ashcroft, 383 F.3d 722, 724-25 (8th Cir.2004)*;

*Lack of credence to explanation as to why plaintiff wasn't hired in October 2011*

Again plaintiff's explanation as to why plaintiff wasn't hired in October 2011 was that she applied too late in the process. Two, arguably inferior, white candidates applied after the plaintiff. (Ex 14; Ex 13: pg 2) This explanation lacks credence and is evidence of pre-text *Reeves v. Sanderson Plumbing Products, Inc*., 530 U. S. 133 (2000)

Defendant misrepresented when plaintiff applied for the loan advisor position.That defendant's explanation is false to serve as evidence of intentional discrimination is a byproduct of "the general principle of evidence law that the fact finder is entitled to consider a party's dishonesty about a material fact as `affirmative evidence of guilt.'" *Wright v. West,* 505 U.S. 277, 296, 112 S.Ct. 2482, 120 L.E d.2d 225 (1992) Defendant stated that plaintiff applied for the loan advisor job on October 20, 2011. (Defendant's ¶29, Ex 14) However the defendant's own records show that plaintiff applied for the job on October 16, 2011 (Ex 13: pg 2) This is a material fact because defendant stated that plaintiff was not hired because she applied too late in the process. The facts show that the plaintiff applied four days before the defendant alleges she applied.

**December 2011 collector position**

Plaintiff's positive and recent job performance is still relevant to this failure to re-hire claim for the collector position. In addition the plaintiff can produce the following items of pre-text as to this count:

*Shifting explanations*

A defendant's shifting explanations of an employment decision can be evidence of pre-pre-text. *Duffy v. Wolle,* 123 F.3d 1026, 1037-38 (8th Cir.1997) Defendant stated that they did not hire plaintiff for the collector job because she didn't pass the background check. (Defendant's ¶23 and 24) However Schwasinger believed that plaintiff was lying on her employment application. (Defendant's ¶19) This is important because Schwasinge testified it was a mutual decision between Werley and her not to hire the plaintiff. (Ex 9; NEOC interview notes with Jeff Worley, July 23, 2012; Ex 2:87:2-16; Ex14: pg 2) In deposition testimony the

defendant also cited plaintiff's negative attitude and behavior in the interview process as a reason for not hiring her. (Ex 8; Ex 5: Deposition of Jeff Werley, 27:13-24; 50:13) In summary judgment proceedings, courts are skeptical of affidavits that contradict deposition testimony *Roberts v. Park Nicollet Health Serv.,* 528 F.3d 1123, 1126 *(8th Cir.2008)* However courts favor depositions because they are relatively spontaneous so they are one of the best forms of evidence for supporting or opposing a summary-judgment motion." *Ferring B.V. v. Barr Laboratories, Inc*., 437 F.3d 1181 (Fed. Cir. 2006) What this evidence really points to is that plaintiff was not hired because of a negative encounter with Schwasinger rather than her criminal background.

*Wrong about material facts*

Defendant stated that plaintiff's criminal convictions were the reason she was not hired. However the plaintiff has produced evidence that she passed a criminal background check to stay employed at Nelnet. ( Defendant's Statement of Facts ¶3, Ex 3, ¶4; Ex 1, 11:24-12:5; 12:16-13:17; 38:6-18) Secondly the defendant stated that plaintiff lied about having her conviction set aside. (Ex 14; pg 2; Defendant's ¶19) The undisputed fact is that plaintiff did have her assault conviction in 2003 set aside in 2007. (Exhibit 10) Finally the defendant gives differing dates as to when the decision was made to not to re-hire the plaintiff as a loan collector.  Plaintiff notes that defendant states they informed plaintiff she failed her background check on December 11, 2011 in Paragraph ¶23, whereas in ¶ 20  they state defendant rejected plaintiff's application on December 9, 2011. The two day difference is material because there is allegation that plaintiff never provided proof that her conviction was set aside. Plaintiff testified that Schwasinger never asked plaintiff for written proof that her conviction had been set aside .(Ex 1: 31:24-32:1)   Her testimony is corroborated a position statement to the NEOC from the defendant stating that

20148610.1

plaintiff was never asked to provide documentation that her conviction had been set aside. (Ex 8 pg 1: July 9, 2012 supplemental position statement to NEOC),the two day gap is material because even if the defendant had asked for verification that the charge was set aside, plaintiff may not have reasonably had to time to produce that evidence if she was not hired on December 9th when she was interviewed on December 7th (Defendant's ¶12)

*Failure to follow company procedure*

Failure to follow company procedure can be evidence of pre-text. *Riesen, supra* . Plaintiff produced competent evidence that defendant did not follow its own procedures under the FCRA or its own policy about the time period considered about previous criminal convictions Schwasinger told plaintiff that she would receive a copy of the results of her background check, but plaintiff testified that she never received a copy of the background report. (Ex 1: 52:23-53:14) Though it was Nelnet's policy to provide letters in regards results under the Fair Credit Reporting Act and Nelnet verifies those letters are sent (Ex 5: 28:14-22; 29:17-22), Nelnet never provided a copy of the letter it sent to Borrego. (Ex 8: Supplemental Position Statement to NEOC, July 5, 2012, pages 1-2) Defendant's stated policy on criminal convictions was that it generally looked back seven years. (Ex 11: Summary of Nelnet Hiring Practices.) The seven-year guideline is consistent with Schwasinger's testimony that criminal convictions that are recent should be given more weight than one in the distant past. (Ex 2: 37:17-28:18, However plaintiff's conviction was over 8 ½ years before she reapplied with Nelnet in 2011. (Ex 4, Ex F, pg 7) In its original position statement, defendant stated that DUI convictions that were over 10 years old were not relevant. (Ex 15: pg 8, February 28, 2012 NEOC Position Statement)

*Different treatment of similarly situated individuals outside of the protected class*

20148610.1

Though defendant considered crimes involving violence to be serious, it was also concerned with financial crimes to be serious. (Ex 11 pg 1, Summary of Nelnet Hiring Practices) This is logical since defendant is a financial services company. (Defendant's ¶ 1) However defendant hired a white male, Jillian Boname, as a loan adviser even though he plead guilty to bad checks. (Ex 12; pg 1;List of Nelnet Employees hired with criminal convictions; Ex 2: 63:5-64:20; Ex 5: 36:18-38:15) So apparently a white male with a conviction for financial fraud was able to work for the defendant, a financial company, but a black female with an 8 ½ year old assault conviction with a good . very recent employment record with company who is well suited for the job, is rejected for re-hire defendant (¶3-5, 9, Ex 6; Ex 2: 52:20-54:20 ; Ex 7; Ex 2: 48:9-22 )

*Defendant's explanation's lack credence*

Defendant falls back on the argument that their considerations of previous criminal convictions are analyzed on a "case by case" basis. .(Ex 2: 37:38-22; Ex 5: 37:10-13; Ex 11, Summary of Nelnet Hiring Practice)  Defendant's concern with the assault conviction is that plaintiff would be aggressive with customers and not comply with Nelnet's ETDBW[1] philosophy. (Defendant's¶19; Ex 3, ¶9, Ex 4, Ex C) To give credence to this assertion you would have to ignore plaintiff's recent positive employment history with the defendant and the fact she had shown by that previous employment that she was well-suited for the collector job. (¶3-5, 9, Ex 6; Ex 2: 52:20-54:20 ; Ex 7; Ex 2: 48:9-22 )

Schwasinger testified that a customer service representative who was impaired by alcohol or hung over would likely not be an employee with whom it would be easy to do business with.

---

[1] **E**asy **T**o **D**o **B**usiness **W**ith. Plaintiff's counsel regrets NOT asking Werley or Schwasinger whether they applied the Easy to Do Business With Philosophy towards the plaintiff's application for rehire.

(Ex 2: 17:1-25) Yet Schwasinger is willing to do a case by case consideration of prospective applicants at Nelnet who have been convicted of DUI. . (Ex 2: 62:20-24) eventhough being convicted of a DUI is evidence of bad judgment[2] and good judgment is essential for working at Nelnet.(Ex 2: 62:12-19) Defendant's stated policy on criminal convictions was that it generally looked back seven years. (Ex 11: Summary of Nelnet Hiring Practices.) The seven-year guideline is consistent with Schwasinger's testimony that criminal convictions that are recent should be given more weight than one in the distant past. (Ex 2: 37:17-28:18, However plaintiff's conviction was 8 ½ years before she reapplied with Nelnet in 2011.

      The principal focus of anti-discrimination laws are the protection of the individual employee, rather than the protection of protected classes as a whole. *Lewis v. Heartland Inns of America*, LLC, 591 F. 3d 1033 (8th Circuit 2010.) In short Title VII forces employers to consider employees as individuals. Instead defendant viewed plaintiff as being overly aggressive because of an assault conviction, despite her employment record to the contrary. Essentially it appears the defendant reduced the plaintiff to the stereotype of the "angry black woman" See *"Looking Behind the Stereotypes of the "Angry Black Woman An Exploration of Black Women's Responses to Interacial Relationships*, EC Childs, Gender and Society, 2005 – gas.sagepub; *Debunking the Myth of the "Angry Black Woman": An Exploration of Anger in Young African American Women* , JC Walley-Hean, Black Women, Gender and Families, 2009, - muse.juh.edu, when her employment records with the defendant showed her to be " cooperative, easy-going, and agreeable in getting along with other people. A focused uncritical listener who wouldn't rock

---

[2] Schwasinger's testimony appears to be somewhat equivocal as to whether she thinks driving drunk is evidence of bad judgment. (Ex 2: 60:16-62:14)

the boat." (E7) Plaintiff concedes that this a harsh conclusion, but plaintiff has piled up substantial circumstantial evidence enough that a reasonably jury could make that conclusion.

**Plaintiff did not fail to exhaust remedies with the NEOC**

The purpose of filing a charge with the EEOC is to provide the Commission an opportunity to investigate and attempt a resolution of the controversy through conciliation before permitting the aggrieved party to pursue a lawsuit. *Alexander v. Gardner-Denver Co.,* 415 U.S. 36, 44, 94 S.Ct. 1011, 1017, 39 L.Ed.2d 147 (1974);*Vaught v. R.R. Donnelley & Sons Co.,* 745 F.2d 407, 411-12 (7th Cir.1984). Because persons filing charges with the EEOC typically lack legal training, those charges must be interpreted with the utmost liberality in order not to frustrate the remedial purposes of Title VII. *E.E.O.C. v. Michael Construction Co.,* 706 F.2d 244, 248 (8th Cir.1983), *cert. denied,* 464 U.S. 1038, 104 S.Ct. 698, 79 L.Ed.2d 164 (1984). Accordingly, the sweep of any subsequent judicial complaint may be as broad as the scope of the EEOC "investigation which could reasonably be expected to grow out of the charge of discrimination." *Griffin v. Carlin,* 755 F.2d 1516, 1522 (11th Cir.1985). Further, a charge of discrimination may be amended "to clarify and amplify allegations made therein. Such amendments ... will relate back to the date the charge was first received." 29 C.F.R. § 1601.12(b). Such amendments may also include "additional acts." *Id.* Cobb v. Stringer, 850 F. 2d 356 –(8th Cir. 1988.**The** Facts show how the investigation evolved. Statement of Schwasinger. Borrego wouldn't have known. Plaintiff would have had no first hand knowledge of the circumstances of why she would not have been interviewed in October 2011 for the loan advisor job. (Ex 13; Ex 14)  Exhibits 13 and 14 are exactly the type of evidence that courts envision an EEOC/NEOC investigation will unearth. Furthermore the *Richter* case not applicable. In Richter,

20148610.1

the plaintiff plead a cause of action, retaliation, that was not covered in her MHRA/EEOC charge. In this case plaintiff is not adding additional causes of action that weren't discussed in her NEOC charge.

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the **27th** day of **April 2015**, he served Reply Brief by CM-ECF upon:

Jeanette Stull
Perry Guthery Hass & Gessford, PC, LLO
233 S 13th Street #1400
Lincoln, NE  68508
402-476-9200
402-476-0094 – Facsimile
E-mail:  jstull@perrylawfirm.com


ROSLYN BORREGO, Plaintiff

REHM, BENNETT & MOORE, P.C., L.L.O.
3701 Union Dr., #200
Lincoln, NE 68516
(402) 420-1400
E-mail: jonrehm@rehmlaw.com


For the firm:  **s/Jon Rehm**
              Jon Rehm       #23097

20148610.1