IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| ROSLYN BORREGO, | |
|---|---|
| Plaintiff, | 4:14-CV-3024 |
| vs. | |
| NELNET, INC., | MEMORANDUM AND ORDER |
| Defendant. | |

    The plaintiff, Roslyn Borrego, has sued Nelnet, Inc., a Nebraska corporation, for race and color discrimination in violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e-2, and the Nebraska Fair Employment Practices Act, Neb. Rev. Stat. § 48-1104. Filing 1. Specifically, the plaintiff alleges that the defendant discriminatorily refused to hire her on two separate occasions for the positions of Loan Advisor and Student Loan Collector, respectively. Filing 1. This matter is before the Court on the defendant's motion for summary judgment (filing 25), as well as the defendant's motion to strike evidence (filing 33) and the plaintiff's motion to strike evidence (filing 38). For the reasons discussed below, each motion to strike will be denied, and the motion for summary judgment will be denied in part and granted in part.

I. BACKGROUND

    The defendant hired the plaintiff, Borrego, who is African-American, as a debt collector on March 3, 2008. Filing 26 at 2. Borrego worked with borrowers who were behind on student loan payments. Filing 26 at 2. On March 1, 2010, she was promoted to the position of Specialist II–Quality Assurance. Filing 26 at 2. In that role, she monitored debt collector calls and offered advice on improvement. Filing 26 at 2. The plaintiff resigned on February 11, 2011 because she planned to relocate to Texas, where her husband had been offered a job. Filing 26 at 2. At the time of her resignation, the plaintiff's job performance was satisfactory, and she was considered eligible for rehire. Filing 26 at 2.

    In the summer of 2011, Borrego began reapplying for work with the defendant. Filing 26 at 3. On October 16, 2011, she applied for the position of Loan Advisor. Filing 32 at 6; filing 35 at 1. Her application was denied without an interview on October 20. Filing 26 at 8. According to the

1

defendant, the plaintiff applied "late in the hiring process" and "[m]ost of the positions had already been filled." Filing 26 at 8. The plaintiff contests the defendant's explanation, noting that two Caucasian candidates applied for the same position after she did and were hired. Filing 32 at 6.

On December 2, 2011, Borrego contacted a former supervisor to see if the defendant had any job openings. Filing 26 at 3. That supervisor contacted another supervisor, Jason Latimer, to ask if he had any open Student Loan Collector positions. Filing 26 at 3. Latimer did not, but he did have "enough room in his department's budget to hire another collector." Filing 26 at 3. He received permission to open the position for the plaintiff to apply. Filing 26 at 3. The position was "essentially the same" as the one the plaintiff held when she first began work with the defendant in 2008. Filing 26 at 4.

Renae Schwasinger was the recruiter for the Student Loan Collector position. Filing 26 at 4. After the plaintiff was unable to complete the application online, Schwasinger asked the plaintiff to complete the application in person at the office. Filing 26 at 4. On December 7, 2011, Borrego did so. Filing 26 at 4. On the application, she disclosed that she had been convicted of assault in 2003, but that the conviction had been set aside in 2007. Filing 26 at 4. After the plaintiff completed the application, Schwasinger reviewed it and discussed it with her. Filing 26 at 4. During that discussion, Schwasinger noted that the defendant had received a contract with the United States Department of Education in June 2009. Filing 26 at 4–5. Because of that contract, the defendant's employees were required to obtain clearance through the federal government. Filing 26 at 5. As a result, the defendant had instituted a stricter background check policy. Filing 26 at 5. This change occurred during the plaintiff's employment, and before her 2010 promotion. Filing 32 at 2.

Schwasinger mentioned that the plaintiff's assault conviction could be a concern for the defendant, because individuals with assault convictions might be "aggressive or belligerent with customers." Filing 26 at 5. According to the plaintiff, she told Schwasinger that she had never become belligerent with customers. Filing 32 at 3. The plaintiff further contends that her work record, as well as her performance on the defendant's "Predictive Index," demonstrated her cooperative, team-oriented personality. Filing 32 at 3. During the same conversation, Schwasinger asked the plaintiff why she had not included a Texas address on her application, given that the plaintiff resigned from her prior position with the defendant in order to move to Texas. Filing 26 at 6. The plaintiff informed Schwasinger that she had not ultimately moved to Texas. Filing 26 at 7.

The defendant conducted a background check on the plaintiff, which indicated the plaintiff had been convicted of third-degree assault in 2003, and was fined and sentenced to 9 months of probation. Filing 26 at 6. The report

2

did not state that the conviction was set aside. Filing 26 at 6. According to the defendant, Schwasinger therefore believed that the plaintiff's conviction had not been set aside, and that the plaintiff was lying. Filing 26 at 5. The plaintiff, however, disputes this. The plaintiff testified that she believed the defendant already knew her conviction had been set aside because she passed a background check when she was previously employed with the defendant. Filing 32 at 4. Additionally, the plaintiff contends that she was never asked to provide documentation that her conviction had been set aside. Filing 32 at 4.

Schwasinger consulted with her supervisor, Jeff Werley, about the plaintiff's application. Filing 26 at 7. According to the defendant, Schwasinger and Werley agreed that the plaintiff's assault conviction disqualified her from employment, though they "were even more concerned about the fact that [the plaintiff] appeared to have lied on her application." Filing 26 at 7. However, the plaintiff notes that Werley also cited the plaintiff's "negative attitude" during the application process as a reason for not hiring her. Filing 32 at 5. On either December 9 or December 11, 2011, Schwasinger informed the plaintiff that she would not be hired because of her assault conviction. *Compare* filing 26 at 6 *with* filing 26 at 7. On December 13, the Lincoln Police Department faxed documentation to the defendant indicating that the conviction had, in fact, been set aside. Filing 26 at 6. According to the defendant, had the plaintiff's background check "come back clear" or had she submitted proof her assault conviction had been set aside before the hiring decision was made, she would have been hired. *See* filing 26 at 7.

The plaintiff disputes various aspects of the defendant's explanation of its reasons for not hiring her. First, the plaintiff contends that the defendant did not follow its own procedures in declining her application. Filing 32 at 7. In particular, she cites a portion of the defendant's background check policy that directs recruiters to consider convictions going back 7 years, and to give less weight to older convictions. Filing 32 at 7. The plaintiff's conviction was over 8.5 years old at the time of her application. Filing 32 at 7. She also asserts that the defendant violated its policies when it failed to provide her with a copy of her background check or a letter about her results. Filing 32 at 6–7.

Second, the plaintiff contends that the defendant hired Caucasian job applicants who had similarly serious convictions. Filing 32 at 5. Specifically, the plaintiff has produced evidence that one Caucasian applicant was hired although he had been convicted of DUI, and that another Caucasian applicant was hired although he had been convicted of passing bad checks. Filing 32 at 5. The defendant counters with evidence that candidates of many

3

races were denied employment because of their background checks. Filing 26 at 8.

And finally, as previously described, the plaintiff cites to her positive work history with the defendant, and other evidence that she contends indicates she has a suitable temperament for the job. Filing 32 at 3.

The plaintiff filed a charge of discrimination with the Nebraska Equal Opportunity Commission on December 21, 2011. Filing 26 at 9. In that charge, she alleged only that the defendant's refusal to hire her for the Student Loan Collector position was discriminatory. Filing 26 at 9. She amended her charge on October 29, 2012 to allege that the defendant's refusal to hire her for the Loan Advisor position was discriminatory as well. Filing 26 at 9.

## II. STANDARD OF REVIEW

Summary judgment is proper if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). The movant bears the initial responsibility of informing the Court of the basis for the motion, and must identify those portions of the record which the movant believes demonstrate the absence of a genuine issue of material fact. *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc). If the movant does so, the nonmovant must respond by submitting evidentiary materials that set out specific facts showing that there is a genuine issue for trial. *Id.*

On a motion for summary judgment, facts must be viewed in the light most favorable to the nonmoving party only if there is a genuine dispute as to those facts. *Id.* Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the evidence are jury functions, not those of a judge. *Id.* But the nonmovant must do more than simply show that there is some metaphysical doubt as to the material facts. *Id.* In order to show that disputed facts are material, the party opposing summary judgment must cite to the relevant substantive law in identifying facts that might affect the outcome of the suit. *Quinn v. St. Louis County*, 653 F.3d 745, 751 (8th Cir. 2011). The existence of a mere scintilla of evidence in support of the nonmovant's position will be insufficient; there must be evidence on which the jury could conceivably find for the nonmovant. *Barber v. C1 Truck Driver Training, LLC*, 656 F.3d 782, 791-92 (8th Cir. 2011). Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. *Torgerson*, 643 F.3d at 1042.

# III. ANALYSIS
## 1. DEFENDANT'S MOTION TO STRIKE

The defendant moves to strike certain evidence the plaintiff relies on in opposition to the defendant's motion for summary judgment. Filing 34. In particular, the defendant argues that the plaintiff's exhibits 6, 7, and 12 should be stricken because they were not authenticated, and that exhibits 8, 9, 14, and 15 should be stricken because they contain inadmissible hearsay. Filing 34 at 2–3.

### (a) Authentication

First, the defendant moves to strike exhibits 6 (filing 31-2), 7 (filing 31-3), and 12 (filing 31-8) because they were not authenticated with supporting affidavits. Filing 34 at 2. But after Fed. R. Civ. P. 56 was amended in 2010, submission of unauthenticated documents in support of or opposition to a summary judgment motion no longer violates it *per se*. *See Foreword Magazine, Inc. v. OverDrive, Inc.*, 2011 WL 5169384, at *2 (W.D. Mich. 2011). Instead, the proper objection to unauthenticated evidence is that it cannot be authenticated, and therefore cannot be presented in admissible form at trial. *See* Fed. R. Civ. P. 56(c)(2); *see also Foreword Magazine,* at *2.[1] Here, defendant has not attempted to assert that plaintiff could not authenticate the documents cited. Thus, the Court will not strike these exhibits on the basis of authentication.

### (b) Hearsay

Next, the defendant moves to strike the plaintiff's exhibits 8 (filing 31-4), 9 (filing 31-5), 14 (filing 31-10), and 15 (filing 31-11) because, according to the defendant, those exhibits contain inadmissible hearsay. Filing 34 at 3. Under Fed. R. Civ. P. 56(c)(2), a party may object "that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Then, the burden is on the proponent "to show that the material is admissible as presented or to explain the admissible form that is anticipated." Fed. R. Civ. P. 56(c) advisory committee note (2010).

First, exhibits 8 and 15 are not hearsay. Under Fed. R. Evid. 801(d)(2), a statement made by a party or its agent is not hearsay when offered against that party. Exhibits 8 and 15 contain statements made by the defendant's counsel, Cheri K. Vandergrift, on the defendant's behalf. *See* filing 34 at 3. Exhibit 8 is a letter from Vandergrift to an NEOC investigator. Filing 31-4. The letter says, "I am writing to provide you additional information requested

---

[1] It is true that a failure to authenticate exhibits violates NECivR 7.1. And the Court does not condone such basic disregard for the local rules. Nonetheless, it shall consider this evidence in its determination.

5

by letter to me on June 27, 2012. Nelnet's responses are as follows[.]" Filing 31-4. Exhibit 15 is the defendant's "position statement," which Vandergrift submitted to the NEOC regarding the plaintiff's claim. Filing 31-11. Clearly, Vandergrift was acting as the defendant's agent, and was "a person whom the party authorized to make a statement on the subject." *See* Fed. R. Evid. 801(d)(2). Thus, exhibits 8 and 15 are not inadmissible hearsay.

Next, the plaintiff argues that exhibits 9 (filing 31-5) and 14 (filing 31-10) are admissible for impeachment purposes. Filing 37 at 2. Exhibit 9 contains the NEOC investigator's notes about her interview of Werley, and exhibit 14 contains the investigator's notes about her interview of Schwasinger.

The plaintiff argues that exhibit 9 is admissible for impeachment purposes because it contains statements by Werley which, according to the plaintiff, are inconsistent with the statements Werley made in his affidavit. Filing 37 at 2. It is true that under Fed. R. Evid. 613(b), extrinsic evidence of a witness's prior inconsistent statement is admissible for impeachment purposes. This type of evidence is not considered hearsay because it is offered not to establish the truth of what the prior inconsistent statement asserts, but to attack the credibility of the witness. *United States v. Yarrington*, 634 F.3d 440, 448 (8th Cir. 2011).

But this does not resolve the hearsay issue. There are two layers of out-of-court statements in exhibit 9: first, Werley's statements to the investigator, and second, the investigator's statements about what Werley said. While Werley's statements themselves may not be hearsay, the investigator's assertions that Werley made those statements are. *See Crews v. Monarch Fire Prot. Dist.*, 771 F.3d 1085, 1092 (8th Cir. 2014). And the plaintiff has not argued that those second-layer assertions are subject to any hearsay exception. Thus, the plaintiff has not demonstrated that exhibit 9 is admissible.

The plaintiff also contends that exhibit 14 is admissible to impeach Werley. Filing 37 at 2. According to the investigator's notes in exhibit 14, Schwasinger said that the plaintiff applied for the Loan Advisor position on October 16, 2011, and that two Caucasian candidates who applied for the Loan Advisor position after the plaintiff applied were hired. Filing 31-10. These assertions, according to the plaintiff, impeach Werley's testimony that the plaintiff applied for the position on October 20, 2011, and that the plaintiff applied "late in the process." Filing 37 at 2. However, as with exhibit 9, the NEOC investigator's notes about what Schwasinger said are hearsay, and the plaintiff has not demonstrated that they fall within any hearsay exception.

Thus, it seems clear that exhibits 9 and 14 *themselves* are not admissible. But it is equally clear that the information in the exhibits could

6

readily be presented in admissible form at trial. For instance, to offer evidence of Werley's purportedly inconsistent statements, the plaintiff need only call the NEOC investigator as a witness—eliminating the hearsay problem. Similarly, to offer evidence as to when the plaintiff applied and whether Caucasian candidates who applied after the plaintiff were hired, the plaintiff could simply call Schwasinger to the stand. Accordingly, the Court will deny the defendant's motion to strike.[2]

### 2. PLAINTIFF'S MOTION TO STRIKE

The plaintiff has moved to strike as conclusory paragraph 3 of the defendant's exhibit 16, paragraph 21 of the defendant's exhibit 3, and the defendant's exhibit 22. But the issue of whether a statement is conclusory goes to the weight, rather than admissibility, of the evidence. *See Brisbin v. Aurora Loan Servs., LLC*, 679 F.3d 748, 754 (8th Cir. 2012) (considering the conclusory nature of certain evidence in the context of whether it was sufficient to raise a genuine issue of material fact). Consequently, the Court will deny the plaintiff's motion to strike.

### 3. DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

The defendant moves for summary judgment for three primary reasons. First, the defendant contends that the plaintiff failed to exhaust her administrative remedies with respect to her claim that the defendant's refusal to hire her for the Loan Advisor position was discriminatory. Filing 26 at 15. Second, for both of the plaintiff's claims, the defendant argues that the plaintiff can neither establish a prima facie case of discrimination, nor show that the defendant's proffered reasons for refusing to hire her were pretextual. Filing 26 at 11. Finally, the defendant contends that with respect to the Loan Advisor claim, it would have made the same decision even absent discriminatory motive. Filing 26 at 18.

### (a) Exhaustion of administrative remedies

The defendant argues that the plaintiff failed to exhaust her administrative remedies with respect to her claim that failing to hire her for the Loan Advisor position was discriminatory. Filing 26 at 15. Specifically, the defendant argues that the plaintiff failed to bring her administrative charge of discrimination within the limitations period. Filing 26 at 15. Because the rules regarding administrative exhaustion differ between Title

---

[2] The Court notes, for the parties' future reference, that pursuant to Fed. R. Civ. P. 56(c)(2), a party may simply object in its brief to evidence it believes to be in admissible: "[t]here is no need to make a separate motion to strike." Fed. R. Civ. P. 56 advisory committee note (2010).

7

VII and Nebraska Fair Employment Practices Act, the Court shall analyze each separately.

*1. Title VII*

Before a plaintiff can bring an unlawful discrimination suit under Title VII, she must first exhaust her administrative remedies by filing a timely charge of discrimination with the EEOC or a state or local agency with authority to seek relief. *Richter v. Advance Auto Parts, Inc.*, 686 F.3d 847, 850 (8th Cir. 2012). For an administrative charge to be "timely," the employee must either file it with the EEOC within 180 days of the alleged unlawful employment practice, or file it with a state or local agency within 300 days of the alleged unlawful practice. 42 U.S.C. § 2000e-5(1). When multiple unlawful employment practices are alleged, "[e]ach discrete discriminatory act starts a new clock for filing charges alleging that act. The charge, therefore, must be filed within the 180- or 300-day time period after the discrete discriminatory act occurred." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002).

Here, the plaintiff's application for the position of Loan Advisor was denied on October 20, 2011. Filing 26 at 8. She filed her original charge of discrimination with the NEOC on December 21, 2011, but alleged only that the defendant's refusal to hire her for the Student Loan Collector position was discriminatory. Filing 26 at 9. She amended her charge on October 29, 2012 to add the allegation that the defendant's refusal to hire her for the Loan Advisor position was discriminatory as well. Filing 26 at 9. Thus, with respect to the Loan Advisor claim, the plaintiff filed her charge of discrimination more than 300 days after the alleged unlawful employment practice.

The plaintiff argues that, nonetheless, her Loan Advisor claim is not barred for three reasons. First, the plaintiff contends that her Loan Advisor claim is sufficiently related to the allegations of her original charge of discrimination to be considered administratively exhausted. Filing 32 at 19. Second, the plaintiff contends that the addition of the Loan Advisor allegation to her charge of discrimination relates back to the filing date of the original charge. Filing 32 at 19. Finally, the plaintiff contends that the limitations period for the Loan Advisor allegation was tolled because she was not aware that her application might have been declined for discriminatory reasons until evidence of that possibility came to light during the NEOC investigation. Filing 32 at 19.

Initially, the plaintiff argues that her Loan Advisor claim is not barred because it is sufficiently related to the allegations of her original charge of discrimination to be considered administratively exhausted. Filing 32 at 19. Courts "deem administrative remedies exhausted as to all incidents of

8

discrimination that are 'like or reasonably related to the allegations of the administrative charge.'" *Tart v. Hill Behan Lumber Co.*, 31 F.3d 668, 671 (8th Cir. 1994) (internal alterations omitted) (quoting *Anderson v. Block*, 807 F.2d 145, 148 (8th Cir. 1986)). Accordingly, "the scope of the civil suit may be 'as broad as the scope of the administrative investigation which could reasonably be expected to grow out of the charge of discrimination.'" *Id.* (internal alterations omitted) (quoting *Cobb v. Stringer*, 850 F.2d 356, 359 (8th Cir. 1988)). The plaintiff argues that although her original charge of discrimination did not include the Loan Advisor allegation, that allegation falls within the scope of the investigation that could reasonably have been expected to grow out of the original charge. Filing 32 at 19. Thus, the plaintiff contends, the Loan Advisor claim is administratively exhausted. Filing 32 at 19.

But in cases where multiple discriminatory refusals to hire are alleged, each refusal to hire constitutes a separate and discrete employment action "that must be individually addressed before the EEOC" or state agency. *Sellers v. Deere & Co.*, 791 F.3d 938, 943 (8th Cir. 2015). And the Eighth Circuit has held that "it is not reasonable to expect the [agency] to look for and investigate such adverse employment actions if they are nowhere mentioned in the administrative charge." *Parisi v. Boeing Co.*, 400 F.3d 583, 585 (8th Cir. 2005). Here, the defendant's refusal to hire the plaintiff for the Loan Advisor position is a discrete employment action, separate from its refusal to hire her for the Student Loan Collector position. Consequently, it would not be reasonable to expect the agency to investigate this allegation in the course of its investigation of the allegations in the original charge of discrimination.

Next, the plaintiff argues that the Loan Advisor claim relates back to the date of the original charge of discrimination. The plaintiff relies on 29 C.F.R. § 1601.12(b), which states that a charge may be amended to "clarify and amplify allegations made therein." It further provides that amendments alleging "additional acts which constitute unlawful employment practices related to or growing out of the subject matter of the original charge will relate back to the date the charge was first received." § 1601.12(b). But as explained above, each refusal to hire is a completely separate and discrete adverse employment action. Thus, the Loan Advisor allegation does not merely "clarify and amplify" the allegations in the original charge, nor is it "related to or growing out of the subject matter of the original charge." *See id.* Rather, it constitutes a completely distinct claim, based on a different set of facts. Accordingly, the addition of the Loan Advisor allegation does not relate back to the date of the filing the original charge.

Finally, the plaintiff argues that the limitations period should be tolled because she was not aware until the NEOC investigation that her application

9

for the Loan Advisor position might have been declined for discriminatory reasons. *See* filing 32 at 19. For Title VII cases, the limitations period begins to run when the plaintiff receives notice of an adverse employment action, even if the employee is not aware of any discriminatory motive behind the action. *Henderson v. Ford Motor Co.*, 403 F.3d 1026, 1032 (8th Cir. 2005). However, a claim may be equitably tolled "when the plaintiff, despite all due diligence, is unable to obtain vital information bearing on the existence of [her] claim." *Dring v. McDonnell Douglas Corp.*, 58 F.3d 1323, 1328 (8th Cir. 1995) (quoting *Chakonas v. City of Chicago*, 42 F.3d 1132, 1135 (7th Cir. 1994)). In making this determination, a court considers "whether a reasonable person in the plaintiff's position would have been aware" of a possible violation of her rights. *Id.* (quoting *Chakonas*, 42 F.3d at 1135). And "the qualification 'possible' is significant because 'if a plaintiff were entitled to have all the time [s]he needed to be *certain* [her] rights had been violated, the statute of limitations would never run.'" *Id.* (quoting *Cada v. Baxter Healthcare Corp.*, 920 F.2d 446, 451 (7th Cir. 1990)). Additionally, equitable tolling "does not apply to 'garden variety' claims of excusable neglect, and should be invoked only in exceptional circumstances truly beyond the plaintiff's control." *Jenkins v. Mabus*, 646 F.3d 1023, 1028–29 (8th Cir. 2011).

Here, the plaintiff believed by December 21, 2011 at the latest that the defendant's refusal to hire her for the Student Loan Collector position was discriminatory. Filing 26 at 9. A reasonable person in her position should have been aware of the possibility that the same employer might have refused to hire her for the Loan Advisor position for the same reasons. These are not the "exceptional circumstances" that would justify equitable tolling. *See Jenkins*, 646 F.3d at 1029. Consequently, the Court will grant summary judgment on the Loan Advisor claim brought under Title VII.

*2. Nebraska Fair Employment Practices Act*

While the plaintiff may not pursue her Loan Advisor claim under Title VII, she may do so under Nebraska law. Although the Nebraska Fair Employment Practices Act requires plaintiffs to administratively exhaust their claims, plaintiffs may instead bring suit under Neb. Rev. Stat. § 20-148. *Goolsby v. Anderson*, 549 N.W.2d 153, 158 (Neb. 1996). Section 20-148 provides an independent cause of action for violations of Nebraska Fair Employment Practices Act, and does not require administrative exhaustion. *Id.* And the plaintiff may rely on § 20-148 even though she did not mention it in her complaint; there is no need to specifically plead § 20-148. *See Trimble v. BNSF Ry. Co.*, 2008 WL 2795863 at *3 (D. Neb. 2008). Thus, the Court will deny summary judgment on the Loan Advisor claim brought under Nebraska law.

(b) <u>Evidence of discrimination</u>

Next, the defendant argues that it is entitled to summary judgment because the plaintiff has not produced evidence sufficient for a reasonable jury to find that the defendant's refusal to hire the plaintiff was discriminatory. Filing 26 at 11.

Under 42 U.S.C. § 2000e-2, it is unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." An employer has committed an unlawful practice when "race, color, religion, sex, or national origin was a motivating factor for any employment practice, even though other factors also motivated the practice." 42 U.S.C. § 2000e-2(m). The Nebraska Fair Employment Practices Act contains a provision nearly identical to 42 U.S.C. § 2000e-2. *See* Neb. Rev. Stat. § 48-1104. Nebraska courts have held that the Nebraska Fair Employment Practices Act "is patterned after 42 U.S.C. § 2000e et seq., and it is appropriate to look to federal court decisions construing similar and parent federal legislation." *Bonn v. City of Omaha*, 814 N.W.2d 114, 121 (Neb. Ct. App. 2012).

The parties agree that there is no direct evidence of discrimination in this case, and that therefore the *McDonnell Douglas* framework applies. *See* filing 32 at 8. Under the *McDonnell Douglas* three-step framework, the plaintiff has the initial burden of establishing a prima facie case. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). If the plaintiff makes a prima facie showing, thus raising an inference of discrimination, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the plaintiff's discharge. *Id.* If the defendant meets this burden, the plaintiff must prove that the defendant's reason is merely a pretext for discrimination. *Id.* at 804.

The defendant contends that it is entitled to summary judgment because at step one, the plaintiff failed to establish a prima facie case of employment discrimination, and at step three, the plaintiff failed to establish that the defendant's proffered reasons for refusing to hire her were pretextual. Filing 26 at 11.

*1. Prima facie case*

A plaintiff may establish a prima facie case of race or color discrimination in the refusal-to-hire context by demonstrating: (1) that she belongs to a protected class; (2) that she applied and was qualified for a job for which the employer was seeking applicants; (3) that, despite her qualifications, she was rejected; and (4) that, after her rejection, the position remained open and the employer continued to seek applicants from persons of

complainant's qualifications. *McDonnell Douglas*, 411 U.S. at 802. The defendant argues that the plaintiff fails on the second prong; it contends that she was not qualified for the jobs she applied for because she "failed" the defendant's background check. Filing 26 at 12.

To demonstrate that she was qualified for a position, "a plaintiff must show only that [s]he possesse[d] the basic skills necessary for performance of the job." *Haigh v. Gelita USA, Inc.*, 632 F.3d 464, 469 (8th Cir. 2011) (quoting *McGinnis v. Union Pac. R.R.*, 496 F.3d 868, 874 (8th Cir. 2007)). When an employer asserts that it refused to hire an applicant because she was unqualified, "the second prong of the prima facie test is exceedingly similar to the proffered non-discriminatory reason in [the] second stage of the burden-shifting analysis." *Dixon v. Pulaski Cty. Special Sch. Dist.*, 578 F.3d 862, 868 (8th Cir. 2009) (abrogated on other grounds by *Torgerson*, 643 F.3d 1031). But courts "are cautious not to conflate the two." *Id.*; *see Lake v. Yellow Transp., Inc.*, 596 F.3d 871, 874 (8th Cir. 2010) (explaining that doing so would "collapse" the *McDonnell Douglas* framework). Whether a plaintiff was qualified turns on whether she, *in fact*, met the minimum requirements for the position; she need not disprove the defendant's assertion that it *believed* she was unqualified. *See id.* "The prima facie burden is not so onerous." *Davenport v. Riverview Gardens Sch. Dist.*, 30 F.3d 940, 944 (8th Cir. 1994).

Here, the defendant does not dispute that the plaintiff's conviction really was set aside. And according to the defendant, "if [the plaintiff] had submitted proof that her assault conviction had been set aside, she would have been hired." Filing 26 at 7. Thus, the parties seem to agree that, in fact, the plaintiff's criminal history did not disqualify her from employment.[3]

However, the defendant seems to argue not that the plaintiff's *criminal history* disqualified her from employment, but that her "failed background check rendered [her] unqualified." Filing 26 at 13. But it cannot be the case that an acceptable background check *itself* is a qualification; rather, a background check is merely a tool to determine if an applicant is qualified. To illustrate, suppose a baseball team is looking for a new relief pitcher, and expressly instructs its scout that the player "must be able to throw a 90-mph fastball." What matters to the team is not that the radar gun flashes "90" when the pitcher throws the ball; what matters is that the ball actually moves that fast. The radar gun is just the tool of measurement.

Similarly, here, the defendant does not claim that it had concerns about applicants with assault convictions because of some importance attached to the background check process itself. Rather, the defendant asserts that it had

---

[3] The plaintiff, of course, maintains that she would have been qualified to work for the defendant even if her conviction had not been set aside. Filing 32 at 16.

concerns because an applicant with an assault conviction could be "aggressive or belligerent with customers." Filing 26 at 5. Accordingly, the plaintiff has shown that she was qualified for the positions she applied for, and has made a prima facie showing of discrimination.

*2. Legitimate nondiscriminatory reason*

Because Borrego made a prima facie showing of discrimination, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its refusal to hire her. *McDonnell Douglas*, 411 U.S. at 802.

With respect to the Loan Advisor position, the defendant asserts that it declined to hire the plaintiff because she applied "late in the hiring process," and "[m]ost of the positions had already been filled at the time she applied." Filing 26 at 8. This explanation is certainly *relevant* to a hiring decision: the fewer open positions, the more competitive the hiring process. However, it does not explain why the defendant chose to hire candidates other than the plaintiff for the remaining open positions. Accordingly, the defendant has failed to meet its burden to articulate a legitimate, nondiscriminatory reason for its refusal to hire the plaintiff for the position of Loan Advisor. Therefore, with respect to this claim, the plaintiff need not produce evidence of pretext to survive summary judgment.

With respect to the Student Loan Collector position, the defendant alleges that it refused to hire the plaintiff because Schwasinger and Werley believed, on the basis of the background check, that the plaintiff's assault conviction had not been set aside, and that the plaintiff was lying when she said it had been. Filing 26 at 7. This explanation constitutes a legitimate, nondiscriminatory reason for refusing to hire the plaintiff.

*3. Pretext*

Because the defendant has proffered a legitimate, nondiscriminatory reason for refusing to hire the plaintiff for the Student Loan Collector position, the burden shifts back to Borrego to establish that the defendant's reasons are mere pretext for discrimination. *McDonnell Douglas*, 411 U.S. at 804. The defendant contends that the plaintiff is unable to establish pretext because the plaintiff cannot show that the defendant acted with discriminatory motive. Filing 26 at 13.

Evidence that the defendant's proffered reason lacks credence is probative of pretext. *See Hutson v. McDonnell Douglas Corp.*, 63 F.3d 771, 777 (8th Cir. 1995). For instance, a plaintiff may point to evidence that the defendant's explanation is "incorrect, contrived, or deceitful." *Id.* However, "proof that the defendant's articulated explanation is false or incorrect does not, standing alone, entitle the plaintiff to judgment; instead, the showing must be that the explanation is a pretext *for* discrimination." *Id.*

13

A plaintiff may show pretext in a variety of ways, including by producing evidence that shows: that the employer "shifted its explanation of the employment decision," that the employer "failed to follow its own policies," or that the employer "treated similarly-situated employees in a disparate manner." *Lake*, 596 F.3d at 874–75. Additionally, although evidence that an employer misjudged an applicant's qualifications "does not [by itself] invalidate the resulting proffered reason," it "may be probative of whether the reasons articulated for an employment decision were merely pretexts for discrimination." *Dixon*, 578 F.3d at 869 (quoting *O'Connor v. Peru State Coll.*, 781 F.2d 632, 637 (8th Cir. 1986)).

Here, Borrego has produced evidence which, according to her, demonstrates that the defendant's explanation is unworthy of credence because it was inconsistent with her positive work history. She also contends that the defendant was "wrong about material facts" relating to the plaintiff's application, that the defendant provided shifting explanations for not hiring the plaintiff, that the defendant failed to follow its own procedures, and that the defendant treated similarly situated candidates differently. Filing 32 at 14–18.

Initially, Borrego contends that the defendant's proffered explanations are unworthy of credence. Filing 32 at 17. The defendant has asserted that Schwasinger and Werley were concerned about applicants with assault convictions because such applicants might be "aggressive or belligerent with customers." *See* filing 26 at 5. The plaintiff argues that this explanation is not credible, because the plaintiff's positive history with the defendant demonstrated that she would be "cooperative, easy-going, and agreeable." Filing 32 at 18. Moreover, Borrego argues, the credibility of the defendant's explanation is further undermined by the fact that her conviction was 8.5 years old at the time of her application. Filing 32 at 18. According to the plaintiff, this evidence shows that the defendant "reduced the plaintiff to the stereotype of the 'angry black woman'" instead of evaluating her as an individual. Filing 32 at 18.

Next, the plaintiff argues that the defendant was "wrong about material facts" when it decided not to hire her. Filing 32 at 15. In particular, the plaintiff points out that—contrary to what Schwasinger and Werley assert they believed—her assault conviction really was set aside. Filing 32 at 15. The plaintiff also notes a discrepancy in the defendant's brief; at one point, the defendant states that it rejected the plaintiff's application on December 9, 2011, and at another point, on December 11, 2011. Filing 32 at 15. According to the plaintiff, if the defendant rejected the plaintiff's application on December 9, it would show that the defendant took only 2 days to make its decision after the plaintiff submitted her application. Filing 32 at 16. This, the plaintiff contends, would demonstrate that the defendant did

14

not give her adequate time to produce evidence that her conviction was set aside. Filing 32 at 16.

Third, according to the plaintiff, the defendant has provided three "shifting explanations" for not hiring her: (1) the defendant has asserted that it rejected the plaintiff's application because she failed the background check; (2) Schwasinger asserted that she believed the defendant lied about her conviction being set aside; and (3) Werley asserted that the defendant rejected the plaintiff's application both because she did not provide documentation that her conviction was set aside, and because she had a negative attitude during the hiring process. Filing 32 at 14–15. The Court does not find these explanations to be particularly contradictory; the Court acknowledges, however, that Werley and Schwasinger did not offer precisely the same explanations for the decision, to the extent that might reflect on each one's credibility.

Fourth, the plaintiff contends that the defendant did not follow its own procedures in declining her application. Filing 32 at 16. In particular, she cites a portion of the defendant's background check policy that directs recruiters to consider convictions going back 7 years, and to give less weight to older convictions. Filing 32 at 16. The plaintiff's conviction was over 8.5 years old at the time of her application. Filing 32 at 16. In addition, the plaintiff contends that she never received a copy of her background check, even though Schwasinger told her that one would be sent. Filing 32 at 16. And, according to the plaintiff, the defendant has been unable to verify that it sent the plaintiff a letter about her background check results, despite its policy to do so. Filing 32 at 16.

Finally, the plaintiff contends that the defendant hired Caucasian job applicants who had similarly serious convictions. Filing 32 at 17. Specifically, the plaintiff has produced evidence that one Caucasian applicant was hired although he had been convicted of DUI, and that another Caucasian applicant was hired although he had been convicted of passing bad checks. Filing 32 at 17. The Court acknowledges that these offenses are different in nature from assault; nonetheless, a reasonable trier of fact could find that they are similarly relevant to a job applicant's suitability for employment with the defendant.

The Court finds that the plaintiff's evidence, considered all together, raises a material issue of fact with respect to whether the defendant's explanation was a pretext for discrimination. Thus, summary judgment is precluded on this basis.

(c) <u>Same decision</u>

Finally, the defendant argues that, with respect to the Loan Advisor claim, even if the plaintiff can establish discrimination, the defendant is not liable because it would have made the same decision absent any discriminatory motive. Filing 26 at 18. According to the defendant, if the plaintiff's application had not been denied before a background check was conducted, it would have been denied after one was conducted. Filing 26 at 18.

If a plaintiff proves a violation under § 2000e-2(m), an employer may defend on the grounds that it "would have taken the same action in the absence of the impermissible motivating factor." 42 U.S.C. § 2000e-5(g)(2)(B). This is "a limited affirmative defense that does not absolve [the defendant] of liability, but restricts the remedies available to a plaintiff. The available remedies include only declaratory relief, certain types of injunctive relief, and attorney's fees and costs." *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 94 (2003).

Here, the defendant has not established as a matter of law that it would have rejected the plaintiff's application absent any illegal criterion. The Court has already explained why a genuine issue of material fact exists with respect to whether the defendant did, in fact, rely on the plaintiff's background check in refusing to hire her for the Student Loan Collector position. Having concluded that summary judgment for the defendant is not warranted where the defendant *did* conduct a background check on the plaintiff, the Court cannot conclude that summary judgment would be warranted where the defendant might hypothetically have done so. Accordingly, the Court will deny summary judgment on these grounds.

IT IS ORDERED:

1. The defendant's motion to strike (filing 33) is denied.

2. The plaintiff's motion to strike (filing 38) is denied.

3. The defendant's motion for summary judgment (filing 25) is granted with respect to "Count 2" of the plaintiff's complaint, to the extent it is brought under Title VII, and denied with respect to "Count 1" under both Title VII and the Nebraska Fair Employment Practices Act, and "Count 2" under the Nebraska Fair Employment Practices Act, as set forth above.

Dated this 21st day of March, 2016.

BY THE COURT:

_John M. Gerrard_
John M. Gerrard
United States District Judge